OPINION
{¶ 1} Defendant-appellant, Patrick R. McKenna, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to a jury verdict, of three counts of rape in violation of R.C. 2907.02, and one count of corruption of a minor in violation of R.C. 2907.04. Because defendant was provided effective assistance of counsel, and because the trial court properly concluded defendant is a sexual predator, we affirm, as modified, to exclude the trial court's finding that defendant is an habitual sex offender.
{¶ 2} By indictment filed May 13, 2002, defendant was charged with three counts of rape, felonies of the first degree, and three counts of unlawful sexual conduct with a minor, felonies of the fourth degree. Trial commenced on January 14, 2003, and the jury ultimately rendered guilty verdicts on three counts of rape and one count of corruption of a minor. While the trial court's judgment entry noted that two of the counts of corruption of a minor, Counts 5 and 6, merged with Count 4, the corruption of a minor charge on which the jury found defendant guilty, the record contains no verdicts regarding Counts 5 and 6. Because any discrepancy is not implicated in the issues raised in this appeal, we do not attempt to resolve it.
{¶ 3} By the trial court's corrected judgment entry filed May 5, 2003, the trial court sentenced defendant to four years on each of the three rape counts, to be served consecutively to each other. It further imposed 12 months on the corruption of a minor charge, to be served concurrently with the sentence imposed on the three rape charges, concurrently with a separate, unrelated receiving stolen property conviction, and consecutively to the sentence defendant then was serving at the Ohio Department of Rehabilitation and Correction. In addition, the court found defendant to be a sexual predator pursuant to R.C. 2950.09(B) and an habitual sex offender pursuant to R.C. 2950.09.
{¶ 4} Defendant appeals, assigning the following errors:
I. Appellant was denied the effective assistance of counsel, as guaranteed by the Sixth Amendment of the United States Constitution, and Article I, § 10 of the Ohio Constitution, when his trial counsel failed to object to inadmissible and prejudicial hearsay testimony from the examining physician recounting what the alleged victim told her, and when counsel also failed to object to similar inadmissible and prejudicial hearsay statements from the alleged victim in the medical report.
II. Appellant was denied the effective assistance of counsel, as guaranteed by the Sixth Amendment of the United States Constitution, and Article I, § 10 of the Ohio Constitution, when his trial counsel elicited incriminating hearsay testimony from the police detective through his own cross-examination, regarding what the alleged victim told her, and thereby opened the door to additional damaging hearsay testimony on redirect examination.
III. The trial court committed plain error in classifying appellant as a sexual predator and a habitual sex offender when it failed to consider all the factors set forth in R.C. 2950.09(B)(3), (a) through (j), and no evidence was presented that appellant had previously been convicted of one or more sexually oriented offenses.
{¶ 5} According to the state's evidence, Brittany Ray was an acquaintance of Jena McKenna, sister of defendant. Through Jena, Brittany developed a relationship with defendant and conversed with him. Their conversation led to their engaging in friendly betting and, ultimately, to Brittany's betting her virginity. Losing the bet, she "did what I said I was going to do" and engaged in vaginal intercourse with defendant on July 11, 2001. (Tr. 64.) At the time, Brittany was 12-years-old; defendant was 22 years of age. Brittany testified she again had sexual intercourse with defendant, as defendant explained that continuing sexual relations would alleviate the pain Brittany experienced in her first sexual encounter. Believing herself to be in love with defendant, Brittany engaged in sexual intercourse with defendant multiple times from July 2001 through January 2002.
{¶ 6} While most of Brittany's encounters with defendant occurred at the home of defendant's family, in January 2002, defendant was in the basement of Brittany's home. He and Brittany were about to engage in sexual relations, when Brittany's mother arrived home unexpectedly. She found Brittany dressed in a bra, underwear, and a bathrobe, and she saw defendant's feet in the bathroom. Brittany's mother called both 9-1-1 and Brittany's father. In the meantime, she inquired of defendant, who lied about his name and his age, claiming to be 17. He, however, admitted he knew Brittany was 12.
{¶ 7} Brittany's father ultimately arrived with a gun and, with the gun at defendant's head, ordered defendant to stay away from Brittany. Defendant "swore up and down and promised us in our face that he would leave Brittany alone." (Tr. 127.) Nonetheless, defendant engaged in sexual intercourse with Brittany at least one more time after the incident in Brittany's home.
{¶ 8} During the course of the trial, the state presented the testimony of Mary Ranee Leder, M.D., who testified to her medical examination of Brittany. The prosecution inquired whether Brittany identified her sexual partner. Without objection from defendant, Dr. Leder testified that Brittany had named defendant. Similarly, the medical reports, admitted without objection at the conclusion of the trial, identified defendant as Brittany's sexual partner.
{¶ 9} The state also presented the testimony of Officer Lisa J. McKissick, a police officer with the Department of Public Safety, Columbus Division of Police, Juvenile Bureau. In cross-examining her, defendant elicited testimony that Brittany told McKissick Brittany was having sexual relations with defendant. On re-direct, the prosecution inquired further, eliciting testimony from McKissick as to the length of time, according to Brittany, that Brittany and defendant had engaged in sexual relations.
{¶ 10} In his first two assignments of error, defendant asserts he was rendered ineffective assistance of counsel because defense counsel (1) failed to object to the hearsay testimony from Dr. Leder concerning the identification of Brittany's sexual partner, and to the hearsay of the same nature in the admitted medical reports, and (2) elicited hearsay testimony from McKissick, which served to further the prosecution's ability to obtain additional prejudicial hearsay on re-direct examination.
{¶ 11} To establish ineffective assistance of counsel, defendant must meet a two-part test. Strickland v. Washington (1984), 466 U.S. 668,686, 104 S.Ct. 2052. Initially, the defendant must show that counsel's performance was deficient. Id. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Id. The defendant then must show that counsel's deficient performance prejudiced the defense. This requires showing that counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. In effect, the defendant must show that there is a "reasonable probability" that, but for counsel's errors, the result of the trial would have been different. Id. at 694.
{¶ 12} "There is a strong presumption that licensed attorneys are competent and that the challenged action is the product of sound trial strategy." State v. Nichols (1996), 116 Ohio App.3d 759, 764. (Citations omitted.) "Even debatable trial tactics do not constitute ineffective assistance of trial counsel." Id. Here, defendant's first assignment of error focuses on Dr. Leder's testimony, and the corresponding medical records, that indicate Brittany named defendant as her sexual partner. Defendant contends the testimony is, and the medical records contain, inadmissible hearsay pursuant to Evid.R. 803(4), to which defense counsel should have objected. The state, in response, contends not only that the testimony was an exception to the hearsay rule, but also that the failure to object was part of defense counsel's trial strategy.
{¶ 13} According to Evid.R. 803(4), "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are excepted from the hearsay rule. Applying Evid.R. 803(4), the Supreme Court stated in State v. Dever (1992), 64 Ohio St.3d 401, "[g]enerally, statements of fault are seen as outside the scope of Evid.R. 803(4) because such statements are usually not relevant to either diagnosis or treatment." Id. at 413. The court, however, also noted that in United States v. Renville, (C.A. 8, 1985), 779 F.2d 430, 436-439, "the leading case in this area, a federal appellate court found that statements made by a child identifying the perpetrator of the sexual abuse are pertinent to both diagnosis and treatment of the child." (Emphasis sic.) Dever at 413. As the Supreme Court explained, "[t]he Renville court made a distinction between statements of fault generally [which are] (not admissible pursuant to the medical diagnosis or treatment hearsay exception) and specific statements of identity by children in sexual abuse cases (which the court found to be admissible). The Renville court found several reasons why the statement of identity is pertinent to treatment or diagnosis. The statement assists the doctor in treating any actual injuries the child may have, in preventing future abuse of the child, and in assessing the emotional and psychological impact of the abuse on the child." (Emphasis sic.) Id.
{¶ 14} Pursuant to Dever, the statements of the examining physician arguably are not inadmissible hearsay. Even if we assume, however, that the doctor's testimony and the corresponding medical reports, which identify defendant, are inadmissible hearsay, counsel's failure to object does not rise to the level of ineffective assistance of counsel, as the record indicates (1) the failure to object was part of defense counsel's trial strategy, and (2) defendant cannot show the requisite prejudice from counsel's failure to object.
{¶ 15} Brittany unequivocally testified defendant was her sexual partner. Indeed, no evidence was offered to the contrary. Counsel for defendant reasonably may have determined that an objection to Dr. Leder's testimony only would have highlighted the testimony, yet served no valid purpose in light of Brittany's upcoming testimony. So, too, would an objection to the medical report be less than productive, as the information contained in the report was something short of startling once Dr. Leder so testified.
{¶ 16} Moreover, whatever prejudice defendant sustained as a result of defense counsel's failure to object was offset by defense counsel's ability to use cross-examination of the doctor to lay the foundation for the defense strategy of portraying Brittany as untruthful. Indeed, as a result of the testimony the prosecution elicited from Dr. Leder, defense counsel was able to procure on cross-examination Dr. Leder's admission that she did not know whether the information Brittany supplied to her in identifying defendant as her sexual partner was true.
{¶ 17} Defense counsel later compounded the doubt about Brittany's veracity by eliciting testimony from various witnesses regarding numerous occasions of Brittany's inability to tell the truth, including instances of Brittany's lying to her mother, to her father, and to the police. Prime among the noted instances was Brittany's fabricated story that she became pregnant by defendant and obtained an abortion through the assistance of defendant's mother. Only when she realized her lie could be discovered did she admit to the fabrication. Given that Dr. Leder and the report only repeated what Brittany offered, we fail to see how the outcome of the trial probably would have been different had defense counsel objected to the testimony and exhibit at issue.
{¶ 18} Instead, the prejudice to defendant arises from defendant's own actions rather than from Dr. Leder's testimony or her medical report. Defendant was found at Brittany's home when Brittany was in a state of undress, and defendant lied about his identity and age. Given that the only real issue was the identity of Brittany's sexual partner, defendant's being at her home when she was partially clad was far more damaging than Dr. Leder's testimony, especially in light of Dr. Leder's admission that she was uncertain of the veracity of Brittany's information. Indeed, in further support of defendant's being the person with whom Brittany was sexually involved, defendant at some point during the time he was having sexual relations with her wrote a lengthy love letter to Brittany and gave it to her.
{¶ 19} Moreover, defendant's reliance on Nichols, supra, is misplaced. In Nichols, the identification that was subject of the trial testimony occurred nearly a year after the incident. The hearsay testimony of the victim's nurse repeated details of the perpetrator's appearance learned from the victim, and the coincidence of details served to corroborate the victim's testimony that occurred just before the nurse testified. In addition, in Nichols, identity of the perpetrator was the sole issue, and because of the lack of corroborating evidence, the identification testimony of the victim and the nurse was crucial.
{¶ 20} Here, by contrast, the hearsay declaration involves Brittany's statement to Dr. Leder that she had sexual intercourse with defendant. His appearance is not at issue; nor are the details of Brittany's statement. Moreover, not only did Brittany testify at trial, subject to cross-examination, but defendant's presence in Brittany's home in January 2002, and his love letter to Brittany, serve as separate corroboration of some aspects of the state's case. Under the facts of this case, we cannot find the level of prejudice here that the court recognized in Nichols.
{¶ 21} Similarly unpersuasive are defendant's contentions, under his second assignment of error, that defense counsel's cross-examination of Officer McKissick opened the door to unfavorable information. While the questions from defense counsel elicited testimony that Brittany told the officer she was having sex with defendant, that testimony was not new information to the trial. Moreover, the question was the backdrop to defense counsel's questioning McKissick about Brittany's lie that she became pregnant by defendant and had an abortion through the assistance of defendant's mother.
{¶ 22} Defendant nonetheless responds that defense counsel's questions on cross-examination allowed the prosecution on re-direct to inquire about other statements Brittany made to the officer, including the duration of Brittany's sexual relationship with defendant. McKissick's testimony on re-direct, however, led to defense counsel's re-cross, where counsel for defendant was able to note that Brittany provided considerable detail in describing the abortion procedure she claimed she underwent, even though the claimed abortion was a lie.
{¶ 23} In the final analysis, the record does not support defendant's contention that, in the absence of Dr. Leder's comment, the statement in the medical report, and defense counsel's questions to Officer McKissick, the outcome of the trial would have been different. Rather, Brittany's lies, defendant's lies, and defendant's presence in Brittany's home in January 2002, outweigh any prejudice arising from the alleged deficiencies defendant notes. Accordingly, defendant's first and second assignments of error are overruled.
{¶ 24} Defendant's third assignment of error asserts the trial court erred in finding him to be a sexual predator and an habitual sexual offender. The state concedes the habitual sex offender label is inappropriately applied to defendant, as he has no prior sexual offenses. The single issue, then, under defendant's third assignment of error, is whether the trial court's finding him to be a sexual predator is supported by the requisite evidence.
{¶ 25} Sexual predator determinations have been held to be civil in nature. See State v. Newton (June 11, 1998), Franklin App. No. 97APA10-1353. The standard for assessing the manifest weight of the evidence in a civil case is whether the judgment is "supported by competent, credible evidence going to all the essential elements of the case." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,280-281.
{¶ 26} When presented with a manifest weight argument in a criminal case, we engage in a limited weighing of the evidence to determine whether the judgment is supported by sufficient competent, credible evidence to permit reasonable minds to so conclude. State v. Thompkins (1997), 78 Ohio St.3d 380, 388-389; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. In either the civil or the criminal analysis, determinations of credibility and weight of the evidence remain within the province of the trier of fact. See, e.g., State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Whether we apply the civil or criminal test for assessing the manifest weight of the evidence, the result here is the same.
{¶ 27} In order for defendant to be designated a sexual predator, the state was required to prove by clear and convincing evidence not only that defendant had been convicted of or pleaded guilty to committing a sexually oriented offense, but also that defendant is likely to engage in the future in one or more sexually oriented offenses. Former R.C.2950.01(E) and former R.C. 2950.09(B)(3); State v. Eppinger (2001),91 Ohio St.3d 158, 161. Defendant does not dispute that a sexually oriented offense is involved in this case. Rather, defendant contends no evidence was presented that defendant is likely to commit other sexually oriented offenses, and the evidence is therefore insufficient to establish that defendant is a sexual predator.
{¶ 28} The issue before us resolves to whether the evidence clearly and convincingly demonstrates that, as an offender who had been convicted of committing a sexually oriented offense, defendant is likely to re-offend. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." Eppinger at 164, quoting Cross v. Ledford (1954), 161 Ohio St. 469,477.
{¶ 29} The purpose of R.C. Chapter 2950 is to protect the safety and general welfare of the people of this state. Former R.C. 2950.02(B); Eppinger at 165. Former R.C. 2950.09(B)(2) required the trial court to consider all relevant factors in making a sexual predator determination, including those enumerated in the statute. Id. at 166; State v. Maser (Apr. 20, 1999), Franklin App. No. 98AP-689. No requisite number of factors must be applicable before a defendant is found to be a sexual predator, and the trial court may place as much or as little weight on any of the factors as it deems to be appropriate. State v. Austin (Nov. 2, 2000), Franklin App. No. 00AP-184; Maser, supra. Even one or two statutory factors will suffice as long as the evidence of likely recidivism is clear and convincing. State v. Hardie (2001),141 Ohio App.3d 1, 5.
{¶ 30} Here, at the time of the offense, defendant was 22. He was aware of Brittany's tender age and should have matured to the point of knowing the wrongfulness of his conduct. See former R.C. 2950.09(B)(2)(a). The victim was 12-years-old when the liaison began, and 13 when it ended. She was emotionally vulnerable to defendant, believing she was in love with him. See former R.C. 2950.09(B)(2)(c). The sexual relationship lasted from July 2001 to January 2002, and thus demonstrated a pattern of abuse. See former R.C. 2950.09(B)(2)(h). Although defendant did not have a record of prior sexually oriented offenses, he had a prior criminal record and was serving time at the time of trial in this case. See former R.C. 2950.09(B)(2)(b).
{¶ 31} Most telling in this case, however, is defendant's conduct following the encounter with Brittany's parents at her home in January 2002. At that time, defendant lied about his conduct to Brittany's mother, was adamantly instructed to stay away from Brittany, and swore he would leave her alone. Despite the admonition and his knowledge of her age, defendant engaged in sexual intercourse with Brittany once or twice after the encounter with Brittany's parents. We recognize that Brittany, believing herself to be in love with defendant, consented to, if not pursued, the relationship. Defendant's conduct nonetheless was a violation of law and a sexually oriented offense. His continued conduct in the face of the January 2002 encounter supports the trial court's determination that defendant is likely to re-offend. Accordingly, defendant's third assignment of error is sustained in part and overruled in part.
{¶ 32} Having overruled defendant's first and second assignments of error, and sustained in part and overruled in part defendant's third assignment of error, we modify the trial court's judgment to eliminate the trial court's finding defendant to be an habitual sex offender, and we affirm the judgment as modified.
 Judgment affirmed as modified.